# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 6, 2026          Decided July 31, 2026

No. 24-3130

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

v.

ANTONIO PAYNE,
DEFENDANT-APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cr-00155)

*Timothy Cone*, appointed by the court, argued the cause and filed the briefs for Appellant.

*Eric Hansford*, Assistant U.S. Attorney, argued the cause for Appellee. With him on the brief were *Jeanine Ferris Pirro*, U.S. Attorney, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, *Solomon Eppel*, and *Will Hart*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, WILKINS, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Appellant Antonio Payne challenges the denial of his motion to suppress and his Carrying a Pistol Without a License (CPWL) conviction. Following a drive-by shooting targeting Payne's home, officers responded, and through interviews, surveillance videos provided by neighbors, and items seen around the home, discovered evidence of multiple crimes. A detective on the scene applied for a search warrant for the home, with an affidavit describing why he thought there was probable cause for a CPWL violation. After the warrant was granted, multiple firearms, various drugs, and drug manufacturing materials were recovered during the search. Payne filed a motion to suppress contraband recovered arguing, among other theories, that there was no probable cause to support the search warrant. The District Court denied the motion, finding there was probable cause for the warrant. The case proceeded to trial, and the jury found Payne guilty of all counts, including one count of CPWL. Because each of Payne's challenges fail, we affirm the District Court's rulings and the jury's verdict.

**I.**

We summarize the evidence in the light most favorable to the jury verdict based on video footage, the District Court's factual findings, and excerpts of the trial transcripts provided in the record. *Bryan v. United States*, 524 U.S. 184, 189 (1998) (explaining that when reviewing a criminal jury conviction, appellate courts accept the government's version of the evidence); *see also United States v. Clark*, 156 F.4th 664, 672 (D.C. Cir. 2025).

On April 18, 2022, a 911 dispatcher broadcast a report of gunshots near Payne's townhouse in the Fort Lincoln neighborhood of Washington, D.C. The dispatcher recounted that callers heard multiple gun shots and described the shooter

as a Black male wearing a black jacket or sweatshirt. Security-camera footage from neighbors captured the events that occurred before and during the shooting. The footage showed an unidentified man in a grey sweatshirt park a dark sedan in the alley behind a townhouse on the 2400 block of Baldwin Crescent, Northeast, walk towards the driveway, and open the unlocked driver-side door of a white car. Shortly after his arrival, two men emerged from the garage and began to confront the unidentified man. One of the men, later identified as Appellant Payne, wore a black jacket and appeared to be holding a gun. *See* S.A. 37; *id.* at 42–43; *id.* at 56. The other man was identified as Payne's cousin, Jermaine Rollins. Payne drew the firearm, instructed the man not to move, and frisked him. Video Exhibit No. 102 at 00:35–00:45.[1] After checking under the unidentified man's sweatshirt, Payne and Rollins let the man go. *Id.* As the man returned to his vehicle, Payne said, "You're lucky I ain't smoke your stupid ass," while waving the gun in the man's direction. Video Exhibit No. 102 at 01:02–01:04. The interaction occurred primarily on the driveway, pavement connecting the garage to the alley, and the alley itself. Video Exhibit No. 102 at 00:00–01:04. During the interaction, Payne stepped away from the driveway onto the asphalt alley multiple times while holding the firearm. *Id.* at 00:45–00:46; *id.* at 00:54–00:59; *id.* at 01:02–01:04.

Within two minutes of departing, the unidentified man in the grey sweatshirt returned in the same dark sedan, appeared to search the same white car, and removed an item from the passenger seat before departing again. About a minute later, Rollins exited the garage and walked to a different car on Baldwin Crescent. While Rollins was outside, the dark sedan

---

[1] The videos are part of the record on file with the United States Court of Appeals for the District of Columbia Circuit. The files were uploaded to Box on October 17, 2025.

matching the one driven by the unidentified man sped down Baldwin Crescent and the driver began shooting a gun in Rollins's direction. Rollins ran back into the garage. Seconds after the shooting, Payne emerged from the garage holding a firearm with both hands while scanning and pointing the gun towards Baldwin Crescent. Payne once again stepped completely off the driveway onto the asphalt portion of the alley.

Two officers responded to the 911 dispatch and entered the townhouse upon invitation from Payne's mother to, in part, make sure Rollins was not harmed. While inside the residence, the officers noticed "in plain view" a single round of ammunition on the ground by the back door leading to the garage. Appellee's Br. 15; *see also* A. Vol. 2, 42.[2] Two detectives also responded to the dispatch and interviewed Rollins and Payne. While on the scene, the detectives were made aware of surveillance footage from neighbors and reviewed the videos. After reviewing the videos, one of the detectives asked Payne whether he owned a firearm and if he had a license to carry a firearm in the District of Columbia, to which Payne replied, "No." A. Vol. 2, 42; *see also* Appellee's Br. 14. The detective then showed Payne a still of the video from the neighbor's surveillance footage of him with a gun to which Payne then uttered, "That's not a gun, that's not a gun, I want my lawyer." *Id.* A record check showed that Payne was not a registered gun owner and there were no firearms registered at the home. A. Vol. 2, 42.

Later that same day, the detective who interviewed Payne applied for a warrant to search the townhouse for evidence of "a violation of D.C. Code § 22-4503 (Carrying a Pistol Without

---

[2] All Appendix references correspond to the red page numbers in the bottom-left corner of the three appendix volumes.

a License)" as he believed there were "Firearm(s), Firearm Ammunition, and Firearm accessories" being concealed at the property. *Id.* at 40. In the warrant application and his affidavit supporting the application, the detective incorrectly listed the applicable D.C. Code as § 22-450*3* instead of § 22-450*4*. *Id.* at 36–37 (emphasis added). However, the parenthetical "(Carrying a Pistol Without a License)" accompanied the code listed on the application and within the affidavit. A D.C. Superior Court Judge approved the warrant, finding probable cause that there were firearms or firearm-related items at Payne's home. Upon execution of the search warrant that evening, drugs, drug manufacturing materials, and at least six different firearms were discovered. Separate DNA testing on six of the firearms yielded "very strong support" for the conclusion that Payne's DNA was on the firearms. S.A. 458–69; *see also id.* at 440–42.

Prior to trial, Payne moved to suppress the evidence seized during the search of his home, arguing the search warrant lacked probable cause. His motion advanced several challenges to the warrant affidavit but did not contend that the typographical error which Payne relies on heavily in this appeal rendered the warrant unsupported by probable cause. The District Court denied the motion to suppress, finding the affidavit provided a sufficient basis for the issuing judge to find probable cause to authorize a search of the home "given that officers responded to a shooting," "Payne was observed wearing clothing that matched the shooter's description," and there was "footage of someone resembling Payne exiting and re-entering the home holding what appeared to be a gun." A. Vol. 2, 51. During closing arguments at trial, Payne conceded that the surveillance video showed him carrying a gun, and he stipulated that he was not licensed to carry a pistol. Following a six-day trial, the jury found Payne guilty on all ten counts. The District Court sentenced Payne to 235 months of

imprisonment and 60 months of supervised release. Payne timely appealed.

On appeal, Payne challenges the denial of his motion to suppress and the sufficiency of the evidence supporting his conviction for Carrying a Pistol Without a License.

## II.

When reviewing the District Court's denial of suppression motions, we review the legal conclusions *de novo* and factual findings for clear error. *United States v. Miller*, 799 F.3d 1097, 1101 (D.C. Cir. 2015). We will affirm the District Court's ruling "so long as any reasonable view of the record supports its denial of the motion to suppress." *Id.* (citation modified). For the reasons stated below, we affirm.

## A.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," but includes "no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans*, 514 U.S. 1, 10 (1995) (citation modified). However, a series of Supreme Court decisions established the exclusionary rule, which, when applicable, requires evidence obtained in violation of the Fourth Amendment to be suppressed and not used against criminal defendants to determine their guilt. *See, e.g.*, *Weeks v. United States,* 232 U.S. 383, 398 (1914). Although suppression of evidence is the default remedy for a violation of the Fourth Amendment, the Supreme Court also adopted the "good-faith exception" to the exclusionary rule. The Court has explained that "[w]hen police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply

if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Even assuming, without deciding, the warrant authorizing the search of Payne's townhouse was not supported by probable cause, the good-faith exception bars suppression of the evidence obtained in the search because the officers acted in objectively reasonable reliance on the warrant.

**B.**

Payne revives his arguments made below that the good-faith exception in this case does not apply because the warrant was plainly not supported by probable cause.[3] For the first time on appeal, Payne also contends that the typographical error (i.e., the relevant criminal code citation being off by one digit) renders the warrant "glaringly deficient" such that the error created "uncertainty about the crime that was being investigated" which cannot "support an inference of good

---

[3] Payne argues we should join the Tenth Circuit and limit our good-faith analysis to the "four corners of the affidavit submitted to the warrant-issuing judge." Appellant's Br. 28–30. But even the Tenth Circuit does not limit its good-faith inquiry to *only* the four corners of an affidavit. Instead, the Tenth Circuit, interpreting *United States v. Leon*, looks to "the four corners of the sworn affidavit *and* any other pertinent information actually shared with the issuing judge under oath prior to the issuance of the warrant, as well as information relating to the warrant application process." *United States v. Knox*, 883 F.3d 1262, 1272 (10th Cir. 2018) (emphasis added). The Tenth Circuit "only preclude[d] a suppression court from considering new *factual* information that is undisclosed to the issuing magistrate." *Id.* at n.9 (emphasis in original). Even if we were to accept the analytical position of our sister circuit, Payne's arguments would still fail.

faith." Appellant's Br. 35–37. We disagree. None of Payne's challenges overcome the applicability of the good-faith exception in this case, as they do not fall within the narrow circumstances identified in *Leon* where the exception does not apply because reliance would be objectively unreasonable.[4]

First, there is no support in the record that the magistrate judge "issuing [the] warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). We have no basis to suspect ill motive or subjective bad faith on the part of the officers who prepared and executed the warrant. The warrant application went through the proper channels, was lawfully issued, and the search was conducted. The District Court explicitly rejected the characterization of the officers' behavior as "false" or "reckless" and found that the government presented "credible evidence" that supported the warrant application. A. Vol. 2, 51. Specifically, the government presented "video footage and testimony [which indicated] that shell casings were found near the garage and that officers viewed footage of Payne holding what appeared to be a handgun outside the garage around the time of the purported shooting[.]" *Id*. There is no basis to overturn the District Court's finding that this information, along with the witness statements recounted in the warrant application, were submitted in good faith. *Id.*

---

[4] Payne also contends that probable cause could not be established since he was "in a mode of self-defense." Appellant's Br. 17–18. He never pursued a self-defense claim below and we need not reach the issue in the first instance upon appeal. *Salazar ex rel. Salazar v. D.C.*, 602 F.3d 431, 437 (D.C. Cir. 2010).

Nor does this case present a scenario in which the "issuing magistrate wholly abandoned his judicial role in a manner . . . [in which] no reasonably well-trained officer should rely on the warrant." *Leon*, 468 U.S. at 923. As a foundational matter, we do not expect officers to "question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient," especially when there is no indication of wrongdoing. *United States v. Washington*, 775 F.3d 405, 407 (D.C. Cir. 2014) (citation modified). Here, there is no basis to conclude that something was amiss such that the officers conducting the search should have second guessed the lawfulness of the search warrant.

Finally, there is no indication that the warrant was "so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." *Leon*, 468 U.S. at 923. We agree with Payne that typographical errors in warrants are "problematic." Appellant's Br. 36. However, a one-digit typo in the citation to the criminal code provision is not inherently fatal, especially when accompanied by explanatory parentheticals that reasonably indicate the proper code. *Cf. United States v. Anderson*, 851 F.2d 384, 390 (D.C. Cir. 1988) (holding that a failure to list the specific violation of federal law in the warrant application was technical in nature and not enough to justify the suppression of evidence found pursuant to the warrant). Nor is the lack of correction of the typo by the warrant-issuing judge sufficient to exclude the evidence in this case. *See Herring*, 555 U.S. at 142 ("[T]he exclusionary rule did not apply when a warrant was invalid because a judge forgot to make 'clerical corrections' to it." (quoting *Massachusetts v. Sheppard,* 468 U.S. 981, 991 (1984))).

For these reasons, we affirm the District Court's denial of Payne's motion to suppress, as the officers acted in objectively reasonable reliance on the warrant.

10

## III.

Payne challenges the sufficiency of the evidence for his conviction under D.C. Code § 22-4504(a)(1). This claim also fails as sufficient evidence established that he carried a firearm outside his home without a valid license.

## A.

When considering a challenge to the sufficiency of the evidence for a conviction, we will uphold a guilty verdict where, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bostick*, 791 F.3d 127, 137 (D.C. Cir. 2015), *judgment entered*, 839 F. App'x 556 (D.C. Cir. 2021) (citation modified). And the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Kwong–Wah,* 924 F.2d 298, 302 (D.C. Cir. 1991) (citation modified). This standard sets an "exceedingly heavy burden" for an appellant to overcome. *United States v. Booker*, 436 F.3d 238, 241 (D.C. Cir. 2006) (emphasis removed) (quoting *United States v. Salamanca*, 990 F.2d 629, 637 (D.C. Cir. 1993)). And Payne has not overcome that bar in this case.

## B.

Payne conceded the surveillance video showed him carrying a pistol and that he did not have a license to carry. Essentially, the jury was left to determine whether Payne "carried a pistol, either openly or concealed on their person, outside their home or business." *Chew v. United States*, 314 A.3d 80, 89 (D.C. 2024) (citation modified); *see also* S.A. 845 (Jury Instructions: "The elements of Carrying a Pistol Without

a License, each of which the government must prove beyond a reasonable doubt, [including that] . . . 4. He carried the pistol in a place other than his home, place of business, or land or premises possessed and controlled by him.").  Prior to the jury deliberations, Payne did not raise any argument regarding the proper understanding of "home."  S.A. 804–17 (in their closing argument, defense counsel did not raise concerns or arguments regarding the boundaries of Payne's home for purposes of reaching a decision on the CPWL charge).  However, Payne now argues that there is insufficient evidence to support a CPWL conviction because he was acting in self-defense and was not "outside the curtilage of his home" while carrying the pistol.  Appellant's Br. 38–39.  Both arguments are without merit.

First, the CPWL prosecution was based primarily on Video Exhibit No. 102, *see* S.A. 734–35, 800–01, which depicts interactions between Payne and the unidentified man prior to the shooting.  During closing arguments, the government showed the video and explicitly called out that Payne "stepped out into the public street . . . twice."  S.A. 801.  There was no objection to the characterization of the street as public, nor did the defense address the characterization in their closing argument.  Considering this evidence, a reasonable jury could conclude beyond a reasonable doubt that Payne carried a pistol away from his home.  *See Bostick*, 791 F.3d at 137.  In an effort to save his claim, Payne appears to retreat to a narrower position in his Reply Brief, stating he took "a momentary step from his driveway onto the adjoining alley."  Reply Br. 14.  "But arguments raised for the first time in a reply brief are forfeited."  *United States v. Lawrence*, 1 F.4th 40, 46 n.3 (D.C. Cir. 2021).  In any event, Payne cites no authority supporting the notion that a step, however fleeting, outside of the home precludes a CPWL conviction or renders the jury's verdict unreasonable.  Second, Payne never sought a self-

defense jury instruction, even after the issue was raised seemingly inadvertently with the District Court prior to jury deliberations. S.A. 722. Payne presents no "exceptional circumstances" that would justify this Court's consideration of a defense that was not presented to the jury and we decline to consider it. *Salazar ex rel. Salazar*, 602 F.3d at 437.

\* \* \*

Accordingly, we affirm the District Court's denial of Payne's motion to suppress and the jury's guilty verdict regarding his CPWL conviction.